```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA           :

     - v. -                        :
                                        07 Cr. 502 (VM)
FRANK TEJADA et al.,               :

            Defendant.             :

- - - - - - - - - - - - - - - - - - -X
```

GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

```
                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York

                              Attorney for the United States
                                   of America

RUA M. KELLY
Assistant United States Attorney

     - Of Counsel -
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA          :

     - v. -                       :
                                         07 Cr. 502 (VM)
FRANK TEJADA et al.,              :

           Defendant.             :
- - - - - - - - - - - - - - - - - -X
```

## GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

The Government respectfully submits this Memorandum of Law in opposition to defendant Frank Tejada's motion to suppress. The defendant has moved for the suppression of physical evidence seized at the time of his arrest on the basis that his arrest and, therefore, the seizure of any property at that time, was unlawful. For the reasons discussed below, the defendant's motion should be denied without a hearing, as the undisputed facts establish that there was probable cause to arrest Tejada.

### BACKGROUND

In May 2007, the Drug Enforcement Administration (the "DEA") learned from a confidential informant ("CI-1") that Javier Sanchez, the defendant, was distributing crack cocaine in Washington Heights in the vicinity of West 139th Street and Hamilton Place. On May 17, 2007, CI-1 placed a telephone call to Sanchez that was consensually recorded and monitored by the DEA.

During the recorded call, Sanchez and CI-1 were arranging to meet so that CI-1 could purchase cocaine from Sanchez, and during the call, Sanchez advised CI-1, in substance, that what he had was "cooked", i.e., cocaine that was cooked into the form of "crack." The following day, at the direction of law enforcement agents, CI-1 met Sanchez in the vicinity of West 139th Street and Hamilton Place in Manhattan.  At that time, CI-1 again engaged in a conversation with Sanchez that was consensually recorded and monitored.  During the conversation, Sanchez informed CI-1 that he would sell him "crack" cocaine at a price of $29 per gram. The CI agreed to purchase approximately 62 grams of crack cocaine from Sanchez at the agreed-upon price.  Sanchez and the CI agreed to meet again on Sunday, May 20, 2007 or Monday, May 21, 2007.

On May 20, 2007, at the direction of law enforcement agents, CI-1 spoke with Sanchez over the telephone.  During that conversation, which was not recorded by the DEA, CI-1 and Sanchez agreed that on Monday, May 21, 2007, CI-1 would meet Sanchez in the vicinity of West 139th Street and Hamilton Place in Manhattan, and that the CI would purchase approximately 100 grams of crack cocaine from Sanchez at the price of $28 per gram.

On May 21, 2007, the CI met Sanchez in the vicinity of West 139th Street and Hamilton Place in Manhattan.  (During the meeting with Sanchez, CI-1 was wearing a recording device, and talking to Special Agent Orville Greene ("SA Greene") on his

cellular phone in real time, while SA Greene was conducting surveillance of the area, along with other DEA agents.)  When Sanchez arrived at the intersection of West 139th Street and Hamilton Place, he was accompanied by Ruben Perez, the defendant. Frank Tejada, the defendant, arrived a few minutes later, and all three defendants were observed together at the intersection.

CI-1 asked Sanchez if he had the 100 grams of crack cocaine. Sanchez indicated that he did, but that CI-1 would have to wait. A short time later, CI-1 and the DEA agents observed Perez and Tejada walking southbound on Hamilton Place.  Sanchez advised CI-1 that he had instructed Perez and Tejada to go and get the crack cocaine.  Approximately 10 minutes later, Perez and Tejada were observed walking northbound on Hamilton Place on opposite sides of the street.  Perez was carrying a black plastic shopping bag. Once Perez and Tejada arrived in the vicinity of West 139th Street, Tejada remained on Hamilton Place, where Sanchez was located, while Perez walked east on West 139th Street.  Perez was then observed placing the shopping bag into a black garbage bag located on the southeast corner of West 139th Street.

After Perez was observed placing the shopping bag into the black garbage bag, Sanchez, Perez and Tejada were placed under arrest.  At that time, SA Greene retrieved the black plastic shopping bag from the garbage bag.  The plastic shopping bag contained a Ziploc bag inside a brown paper bag with a rubber

3

band around it.  The Ziploc bag contained a yellow-colored substance that appeared to be cocaine base.  SA Greene performed a field test on the substance found in the Ziploc bag.  That substance tested positive for the presence of cocaine.  The total weight of the cocaine base was approximately 117 grams.

At the time of the arrests, agents also searched Tejada's person, and recovered, amongst other items, a Samsung T-Mobile cellular telephone.

### Indictment

On June 5, 2007, a grand jury in the Southern District of New York returned a two-count indictment, charging Sanchez, Perez and Tejada with conspiring to distribute and possess with intent to distribute approximately 117 grams of cocaine, from on or about May 18, 2007, up to and including on or about May 21, 2007, in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A), and 846, and Title 18, United States Code, Section 2.  The Government has produced discovery to the defendant in compliance with Rule 16 of the Federal Rules of Criminal Procedure.  This discovery includes tape recordings of conversations between defendant Sanchez and the UC.  Additionally, the Government has informed the defendant of tangible evidentiary items currently in its possession, including the cellular telephone found in Tejada's possession at the time of his arrest, and has provided that item for defense counsel's

inspection upon request.

**ARGUMENT**

**I.   A Hearing Is Not Necessary When There Is No Issue of Fact Regarding Probable Cause.**

**A.   Applicable Law**

The defendant's motion to suppress physical evidence – the cellular telephone seized from his person – should be denied without an evidentiary hearing because the undisputed facts show that law enforcement officers had probable cause to arrest Tejada and search his person. It is well settled that an evidentiary hearing on a motion to suppress "should not be set as a matter of course, but only when the petition alleges facts which if proved would require the grant of relief," Grant v. United States, 282 F.2d 165, 170 (2d Cir. 1960), and that the facts alleged in the affidavit are based on "personal knowledge." United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967). Thus, where "assertions are unsupported by an affidavit from anyone with personal knowledge of the underlying facts," United States v. Martinez, 634 F. Supp. 1144, 1147 (S.D.N.Y. 1986), a "court need not reach the merits of th[e] claim, nor must the court conduct a hearing to resolve factual disputes." Id.; see also United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992) (hearing required if "moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in

6

question" (internal quotation omitted)); United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969) (no hearing necessary if defendant's papers did not "state sufficient facts which, if proven, would have required the granting of relief requested"), cert. denied, 396 U.S. 1019 (1970); United States v. Vasta, 649 F. Supp. 974, 986 (S.D.N.Y. 1986) ("to raise a factual issue . . . such that a hearing is required, the defendant must support his claim with an affidavit based on personal knowledge").

Hence, if a motion to suppress raises no issue of material fact (supported by a affidavit based on personal knowledge) regarding the issue of probable cause, the motion may be denied without an evidentiary hearing. See, e.g., United States v. Ruiz, 1994 WL 613294, at *4 (Nov. 7, 1994); see also United States v. Mathurin, 148 F.3d 68, 69 (2d Cir. 1998) (stating that hearing not required when motion to suppress is based on "*the characterization of a set of circumstances, such as the existence of probable cause for arrest*")(*emphasis added*).

**B.    Discussion**

The affirmation of Frank Tejada, along with the affirmation of defense counsel, simply does not raise an issue of material fact requiring an evidentiary hearing. If the agents had probable cause to arrest Tejada, the cellular telephone was lawfully seized from his person incident to arrest. Yet nothing in the defendant's affidavit raises an issue of material fact as

to whether probable cause existed to arrest Tejada. Tejada merely states, in conclusory fashion, that he "was walking on a public street" at the time of his arrest and "had not committed any crime or engaged in any illegal activity" prior to his arrest. Affirmation of Frank Tejada, at ¶2. Tejada's affirmation simply characterizes the set of circumstances leading up to his arrest, rather than asserting facts that, if true, would render the arrest illegal. In fact, the Government's witnesses would testify that Tejada <u>was</u> walking on a public street, but the totality of the circumstances – <u>i.e.</u>,, the calls previously recorded between Sanchez and CI-1, the surveillance conducted at the scene prior to arresting Tejada, the information provided by the confidential informant, and the agents' training and experience – reasonably led the agents to conclude that the defendant was serving as a "lookout" for Sanchez during a drug transaction while walking down those public streets. Tejada's assertion thus amounts to little more than his general protestation that he did not commit the crime charged, which does not suffice to trigger a right to an evidentiary hearing. Compare <u>United States</u> v. <u>Mathurin</u>, 148 F.3d 68, 69 (2d Cir. 1998) (requiring evidentiary hearing where defendant claimed agent failed to administer <u>Miranda</u> warnings).

**II.   Tejada Was Properly Searched Incident to His Lawful Arrest.**

**A.   Applicable Law**

A warrantless arrest is justified where there is "probable cause when the defendant is put under arrest to believe that an offense has been or is being committed." United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987).  Probable cause exists "if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonable trustworthy information to justify a person of reasonable caution believing that an offense has been or is being committed by the person to be arrested."  United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990) (citing, inter alia, Brinegar v. United States, 338 U.S. 160, 175-76 (1949) and Illinois v. Gates, 462 U.S. 213, 230-32 (1983)).  Probable cause is not a rigid or technical requirement, but "is a flexible, common-sense standard."  Texas v. Brown, 460 U.S. 730, 742 (1983).

The seizure of the cellular telephone from Tejada at the time of his arrest was proper under the "incident to arrest" exception to the warrant requirement.  Upon a valid arrest, law enforcement officers may search "the arrestee's person and the area within his immediate control."  New York v. Belton, 453 U.S. 454, 457 (1981) (internal quotes omitted).  An officer's general need to disarm a suspect or preserve evidence justifies such a search.  United States v. Ullah, 2003 WL 1396300 (S.D.N.Y. March

9

20, 2003) (Keenan, J.) (citing United States v. Robinson, 414 U.S. 238, 235 (1973)). Further, "[w]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Belton, 453 U.S. at 460.

B.  Discussion

Here, agents had ample probable cause based on the totality of the circumstances to arrest Tejada for conspiring to distribute and possess with intent to distribute 117 grams of crack cocaine. As detailed above, Sanchez had multiple recorded conversations with a confidential informant about exchanging cash for narcotics. On May 21, 2007, the date of the arrest, Tejada arrived at the location for the scheduled drug deal just minutes after Sanchez. Tejada was observed by DEA agents talking with Perez and Sanchez, then walking down Hamilton Place with Perez. At that time, CI-1 advised SA Greene by cellular telephone that Sanchez had just ordered Perez and Tejada to go get the drugs. The DEA agents then observed Tejada walking back to the intersection of West 139th Street and Hamilton Place at the same time as Perez, but noted that Tejada was now traveling on the opposite side of the street from Perez – conduct consistent with acting as a "lookout" or decoy for law enforcement. The agents also observed that Perez, previously empty-handed, was carrying a

plastic shopping bag. The agents then saw Perez dropping the bag into a garbage bag, hanging off the side of a metal fence nearby. Based on their knowledge of the investigation, and their training and experience, the DEA agents believed that Tejada conspired to distribute 117 grams of crack cocaine with Perez and Sanchez on May 21, 2007, prior to his arrest. These facts easily satisfy the minimal showing required for probable cause to believe that Tejada was engaged in illegal narcotics activity. Accordingly, Tejada's arrest was valid and agents properly searched his person incident to the arrest to check for weapons and to preserve evidence. See Belton, 453 U.S. at 460.

## CONCLUSION

For the foregoing reasons, defendant's pretrial motions should be denied.

Dated:    New York, New York
          October 19, 2007

                                        Respectfully submitted,

                                        MICHAEL J. GARCIA
                                        United States Attorney


                                    By:_____
                                        RUA M. KELLY
                                        Assistant United States Attorney
                                        Tel. No.: (212) 637-2471

CERTIFICATION OF SERVICE

      I hereby certify that a copy of the Government's Memorandum of Law in Opposition to Defendant Frank Tejada's Motion to Suppress filed in this matter was served on:

      Jennifer Brown, Esq.
      Federal Defenders of New York
      52 Duane Street
      New York, New York 10007

by electronic mail on the 19th day of October, 2007.

_____
RUA M. KELLY
Assistant U.S. Attorney