Xavier R. Donaldson
Anthony S. Chilliest
Erika McDaniel Edwards*
*Member NY, NJ & GA Bars

**DONALDSON, CHILLIEST & McDANIEL, LLP**
Attorneys at Law
1825 Park Avenue, Suite 1102
New York, New York 10035
Telephone (212) 722-4900
Facsimile (212) 722-4966

Ozro Thaddeus Wells
Thomas B. Donaldson
Paula Brown Donaldson
Of Counsel

622 Bloomfield Avenue, lower level
Bloomfield, New Jersey 07003
(973) 743-4700

September 2, 2008

**VIA FACSIMILE 212-805-6382 AND ECF**
Honorable Victor Marrerro
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    *United States v. Ruben Perez*
                 07 Cr 502 (VM)

Dear Judge Marrerro:

      As this Court is aware, on October 25, 2007 Mr. Ruben Perez plead guilty to the charges of the aforementioned indictment. Please accept this letter on behalf of Mr. Perez regarding his sentencing to be held on September 5, 2008 related to the factors articulated in 18 USC 3553(a) and any other factor that this Court may deem relevant.

## ANALYSIS OF 18 USC 3553 FACTORS

(1)    NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY OF AND CHARACTERISTICS OF THE DEFENDANT

**Nature and circumstances of the offense**

      Mr. Perez was charged in a multiple count indictment with conspiracy to possess and distribute more than fifty (50) grams of crack in violation of 21 USC 841(b)(1)(A) and related charges. Specifically it was alleged that after several conversations between a confidential informant and Javier Sanchez (co-defendant), law enforcement conducted an undercover operation with the intent to purchase narcotics in the northern area of Manhattan from Mr. Perez and his co-defendants. Once in the area, the confidential informant met with Mr. Perez and Mr. Sanchez and requested the 100 grams of crack cocaine. Mr. Perez and Mr. Frank Tejada then walked down the street to obtain the narcotics. Mr. Perez and Mr. Tejada was later observed returning with Mr. Perez carrying a black bag in his hand. Mr. Perez was thereafter observed placing the black bag in a garbage can. Law enforcement then seized Mr. Perez and his co-defendants and

recovered the black bag from the garbage can containing approximately 100 grams of crack cocaine.

**Characteristics of the Defendant**

Mr. Perez was born on March 6, 1983 in Santo Domingo, Domincan Republic. He has four (4) siblings: Richard Perez, Anderson Perez, Liliana Perez and Adri Perez. Each of his siblings live with his parents, Mingo Pereez and Antonia Perez in Santo Domingo. Mr. Perez's mother, Antonia Perez is a homemaker and his father Mingo Perez is a bus driver. Although, his father worked hard, it was difficult for the father to provide for five (5) children on a very modest income.

When Ruben Perez was sixteen (16) years old and had not completed high school, he left home. For the next three (3) years, Mr. Perez worked at a horse stable near his home in Santo Domingo. During these wayward years, however, Mr. Perez began hanging with a bad element in his community. Because of these unfortunate associations, Mr. Perez joined a gang and began engaging in gang related activities. Moreover, Mr. Perez paid dock workers to provide him items imported from the United States. In 2002, however, Mr. Perez went back home to his family.

In 2005, Mr. Perez illegally entered the United States and resided in Miami, Florida until 2006. While in Miami, Mr. Perez did daily construction work and carpet installation to make a decent living. In 2006, Mr. Perez relocated himself to New York, New York. Once in New York, Mr. Perez began for the first time selling narcotics, specifically marijuana and cocaine. New York is also where Mr. Perez met Erika Cedeno, his current girlfriend and mother of his one (1) year old daughter, Yela Cedeno.

Although Mr. Perez does not have a documented history of mental illness, during the summer of 2007, Mr. Perez attempted suicide by hanging himself with a sheet. This tragic episode was the result of being held in solitary confinement for fifteen (15) days. Currently, he is under the care of a psychologist and is being held in a unit for inmates requiring mental health treatment.

**Cooperation of Ruben Perez**

As stated above, Mr. Perez was arrested and charged with violating 21 USC 841(b)(1)(A). As this Court is aware, Mr. Perez placed himself and his family in harms way by cooperating with the Government. Indeed, there is evidence that Mr. Perez co-defendant's attempted to influence his testimony by confronting him before trial. Notably, Mr. Perez and his co-defendants are from the same small neighborhood in the Dominican Republic. Because Mr. Perez cooperated against these defendants, the safety of his family and possibly friends are in serious jeopardy. This, however, did not deter Mr. Perez from cooperating with the government in it's pursuit of justice. To that end, Mr. Perez met with the Government on several occasions, provided the Government truthful, complete information and then testified at a trial against his friend and co-defendant, Frank Tejada.

Significantly, Mr. Perez's cooperation involved the actual testimony at trial of the events in the question. This testimony placed Mr. Perez under intense scrutiny of the defense and forced him to confront demons that he had since buried. Mr. Perez, however, did not hesitate in his commitment to the Government and testified truthfully.

Indeed it is clear that because Mr. Perez plead guilty and became a cooperator, this fact persuaded one of Mr. Perez's co-defendant's to plead guilty. Moreover, because of Mr. Perez cooperation and testimony, the Government secured convictions against Mr. Tejada and Mr. Sanchez. As such, because of Mr. Perez's full and complete cooperation, the Government secured two (2) convictions related to 21 USC 841(b)(1)(A) violations.

(2) NEED FOR THE SENTENCE IMPOSED

**Reflect seriousness of the offense, promote respect for law & just punishment**

As stated above, Mr. Perez was arrested on May 22, 2007 and immediately remanded to the custody of the Bureau of Prisons. Mr. Perez is requesting a sentence of time served. Mr. Perez believes that his extensive cooperation and strong family ties illustrates respect for law and his incarceration along with supervised release shall serve as just punishment.

**Specific and General Deterrence**

As stated above, the arrest of Mr. Perez was clearly a catalyst of his separation from his child in New York City. Moreover, the fact that Mr. Perez testified against persons from his small neighborhood in the Dominican Republic has directly placed his family in harms way. Undoubtedly, the aforementioned in addition to the fact that Mr. Perez has been incarcerated since his arrest away from his family, friends and loved ones shall deter Mr. Perez from committing any further criminal conduct and protect the public from further crimes of Mr. Perez.

**Provide defendant with needed educational, vocational, medical care or other treatment**

As the Court is aware, Mr. Perez attempted suicide as a result of his incarceration that may require additional medical care. Moreover, although Mr. Perez is no stranger to hard work, additional vocational and educational training may be of assistance to Mr. Perez to ensure that he becomes a productive member of society. It is our position that these matters may be met via supervised release.

KINDS OF SENTENCES AVAILABLE

Because Mr. Perez cooperated with the government, the Court can sentence Mr. Perez it it's discretion. Available types of punishment include but are not limited to: home detention, community confinement, work release, probation, time served or further imprisonment.

SENTENCING RANGE

At the time of Mr. Perez arrest, the Government seized approximately one hundred (100) grams of crack cocaine. During Mr. Perez' proffer sessions, Mr. Perez truthfully admitted to conspiring to distribute or sell narcotics with his co-defendants. The guideline analysis for a violation of 21 USC 841(b)(1)(A) is found in United States Guidelines Section 2D1.1. Because Mr. Perez plead guilty to conspiring to possess and distribute more than 50 grams of crack, his base level is **32**. Because Mr. Perez accepted responsibility in a timely fashion, his base level is reduced by **3** pursuant to Section 3E1.1(a) and (b) to **29.** Based on Mr. Perez's criminal history, he has a total of five points, making his **Criminal History Category III.** Thus, because Mr. Perez has a base level of 29 and a criminal history category of III, his Guidelines Range is **108-135**.

ANY PERTINENT POLICY STATEMENTS

Mr. Perez would like the Court to consider his family ties (he has two small children in the United States) and his significant cooperation with the Government. Although the Sentencing Commission has concluded that some of these are not "ordinarily" relevant in determining a departure, this Circuit has ruled that the "…Guidelines limitations on the use of factors to permit departures are no more binding on sentencing judges than the calculated guidelines ranges themselves." *U.S. v. Jones*, 2006 U.S. App. Lexis 19789 (8/2/06). As such, the Court is free to use these factors to accord Mr. Perez a Non-Guideline sentence of time served.

AVOIDANCE OF UNWARRANTED SENTENCE DISPARITY AMONG SIMILAR DEFENDANTS

As the facts indicated Mr. Perez is considered a small part of a loosely associated and unorganized narcotic conspiracy. After his arrest and indictment, he began cooperating with the Government and assisted in the successful prosecution of two (2) of his co-defendants resulting in two (2) convictions. According to records available to be reviewed in this case, both of Mr. Perez's co-defendants received the minimum allowed by statute. It is the position of Mr. Perez, that he is not in the same position as his co-defendants and more importantly should be compared with similarly situated defendant's across the country. We, however, have not been able to review a significant amount of cases that are similar with Mr. Perez and only ask the Court to use it's discretion to sentence Mr. Perez to time served.

CONCLUSION

      Accordingly, Mr. Perez believes that a Non-Guidelines sentence of "time-served" is reasonable in this case because he has significant family ties, his current incarceration has served to deter him from any future criminal behavior, he was not a manager/supervisor of the conspiracy and he has substantially assisted the Government by providing crucial, truthful and "first rate" information to the Government and testifying at trial in the successful prosecution of his co-defendants.

      Respectfully submitted,

      Xavier R. Donaldson
      Attorney for Ruben Perez

Cc:    Assistant U.S. Attorney
       Rua Kelly
       212-637-0016